UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────X
ROSA ZAYAS and EDWIN ZAYAS, as Parent and
Natural Guardian of R.Z., and ROSA ZAYAS, and
EDWIN ZAYAS, Individually *et al.*,

                1:25-cv-01880

        Plaintiffs,

-against-

MELISSA AVILÉS-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

        Defendants.
───────────────────────────────X

## **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF A PRELIMINARY INJUNCTION**

Kenneth Willard
Liberty and Freedom Legal Group, Ltd.
*Attorneys for the Plaintiff(s)*
300 East 95th Street, Suite 130
New York, New York 10128
hearings@pabilaw.org

# **TABLE OF CONTENTS**

*Page(s)*

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL BACKGROUND .................................................................................................... 4

ARGUMENT ........................................................................................................................ 6

    I.   PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING R.Z.'S PENDENCY AT iBRAIN FOR THE 2024-2025 SCHOOL YEAR ......................................................................................... 6

    II.  PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTIONUNDER THE TRADITIONAL REQUIREMENTS ..................... 8

CONCLUSION .................................................................................................................... 12

## Table of Authorities

**Cases**

*A.D. ex rel. L.D. v. Hawaii Dep't of Educ.*,
  727 F.3d 911 (9th Cir. 2013) ..................................................................................................11

*Abrams v. Carranza*,
  No. 19-CV-4175, 2019 U.S. Dist. LEXIS 95403 (S.D.N.Y. June 6, 2019) ....................................9

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020) ..................................................................................................11

*Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*,
  560 F. Supp. 701 (W.D.N.Y. 1983) ..........................................................................................9

*C.F. ex rel. R.F. v. New York City Dep't of Educ.*,
  746 F.3d 68 (2d Cir. 2014)(f) ................................................................................................. 5

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
  400 F.3d 508 (7th Cir. 2005) ...................................................................................................5

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
  689 F. Supp. 197 (S.D.N.Y. 1988) ...........................................................................................2

*Doe v. E. Lyme Bd. of Educ.*,
  790 F.3d 440 (2d Cir. 2015) ...........................................................................................1, 6, 7

*Drinker by Drinker v. Colonial Sch. Dist.*,
  78 F.3d 859 (3d Cir. 1996) ....................................................................................................11

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*,
  580 U.S. 386 (2017) ................................................................................................................4

*Joshua A. v. Rocklin Unified Sch. Dist.*,
  559 F.3d 1036 (9th Cir. 2009) ...............................................................................................11

*Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*,
  No. 90-CV-4, 1990 WL 36803 (N.D.N.Y. Mar. 30, 1990) .......................................................9

*M.R. v. Ridley Sch. Dist.*,
  744 F.3d 112 (3d Cir. 2014) ....................................................................................................5

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
  386 F.3d 158 (2d Cir.) .............................................................................................................7

*N.J. v. New York*,
    872 F. Supp. 2d 204 (E.D.N.Y. 2011) .................................................................................9

*Olson v. Robbinsdale Area Sch., No. CIV.04-2707 RHK/AJB*,
    2004 WL 1212081 (D. Minn. May 28, 2004) ...............................................................9, 11

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
    96 F.3d 78 (3d Cir. 1996) ....................................................................................................6

*T.K. v. New York City Dep't of Educ.*,
    810 F.3d 869 (2d Cir. 2016) ................................................................................................4

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
    752 F.3d 145 (2d Cir. 2014) ..........................................................................................5, 10

*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989) ................................................................................................9

*Ventura de Paulino v. New York City Dep't of Educ.*,
    959 F.3d 519 (2d Cir. 2020) .......................................................................................1, 6, 9

*Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*,
    No. 1:21-CV-00711 (MKV), 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021) ................9, 11

*Zvi D. by Shirley D. v. Ambach*,
    694 F.2d 904 (2d Cir. 1982) .....................................................................................1, 7, 10

**Statutes**

20 U.S.C. § 1415 ..............................................................................1, 2, 5, 6, 7, 8, 9, 10, 12

N.Y. Educ. Law § 4404 ..............................................................................................................1, 5

**Other**

34 C.F.R. § 300.518 ...................................................................................................................1

Fed. R. Civ. P. 65 .......................................................................................................................1

**PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for a Preliminary Injunction under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) (the "stay-put" or pendency provision) and Fed. R. Civ. P. 65(a). Plaintiffs seek an order compelling Defendants, MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, "DOE"), to fully and immediately implement Students pendency placement at his current educational program, iBRAIN, including tuition, related services, special transportation, and nursing services.

Under the IDEA's pendency provision, funding for a disabled student's current educational placement is an automatic entitlement triggered by the filing of a due process complaint. 20 U.S.C. § 1415(j); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). Courts have repeatedly recognized that the stay-put provision operates as an "automatic preliminary injunction," maintaining the student's educational status quo until litigation is resolved. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).

Here, Plaintiffs' pendency rights were unambiguously established by the Impartial Hearing Officer's ("IHO") Order on Pendency, which found iBRAIN to be Student's last unappealed placement in SRO Decision 23-299. [ECF No. 1-3]. During the pendency of a due process proceeding, federal and state law mandate that the student must remain in their then-current educational placement, unless the parent and DOE agree otherwise. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(4)(a) (McKinney). Courts recognize that pendency serves a

1

critical function in ensuring educational continuity for students with disabilities, preventing unilateral disruptions in placement.

The DOE has failed to fully fund Student's pendency program as required by law, resulting in delays, financial hardship, and potential disruption to Student's education. The DOE's disregard for the IHO's binding pendency determination constitutes a clear violation of the IDEA and warrants immediate injunctive relief.

Because pendency is an automatic entitlement under the IDEA, Plaintiffs need not satisfy the traditional preliminary injunction standard. See *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988) (holding that pendency injunctions are not subject to traditional preliminary injunction factors). However, even under the traditional standard, Plaintiffs can readily establish: (1) irreparable harm due to the DOE's failure to honor the Pendency Order, (2) a clear likelihood of success on the merits, and (3) that the balance of hardships and public interest weigh decisively in favor of enforcement of the Student's statutory rights.

For the foregoing reasons, Plaintiffs seek an order compelling DOE's full and immediate compliance with its pendency funding obligations, ensuring the uninterrupted provision of tuition, related services, transportation, and nursing services at iBRAIN, consistent with the IHO's Pendency Order and 20 U.S.C. § 1415(j).

## STATEMENT OF FACTS

Plaintiffs Rosa and Edwin Zaya are the parents and natural guardians of R.Z., a student with multiple severe disabilities, including cerebral palsy, hydrocephalus, seizure disorder, and dystonia. [ECF No. 1-2, pp. 3-4]. R.Z. is legally blind due to Retinopathy of Prematurity and high myopia [ECF No. 1-2, p. 4]. R.Z. suffers from a brain injury that has resulted in significant impairments in cognition, language, memory, attention, reasoning, problem-solving, motor skills,

sensory processing, psychosocial behavior, and speech. [ECF No. 1-2, p. 3].

R.Z. is non-verbal, is learning to communicate using an Assistive Technology ("AT") device, and "requires a high degree of individualized attention and intervention throughout the school day." [ECF No. 1-2, p. 4]. He is non-ambulatory, requires a full-time 1:1 nurse to manage his complex medical needs, including G-tube feedings and seizure monitoring, and requires a 1:1 paraprofessional to assist with mobility and tasks throughout the school day. [ECF No. 1-2, pp. 4-5]. Given the intensity of his needs, R.Z. requires an individualized, structured educational program in a small, highly supportive classroom environment, along with an extended school day and extended school year ("ESY") to prevent regression. [*Id.*].

On December 16, 2024, Plaintiffs filed a Due Process Complaint ("DPC") seeking to maintain R.Z.'s placement at iBRAIN, including related services, special transportation, and 1:1 nursing. This DPC was assigned IHO Case No. 289807. Plaintiffs asserted that the New York City Department of Education ("DOE") failed to offer or provide R.Z. a Free Appropriate Public Education ("FAPE") for the 2024–2025 ESY. [ECF No. 1-2, p. 3]. The DPC alleged that the DOE failed to, *inter alia*: provide a Procedural Safeguards Notice; provide a School Location Letter; conduct an evaluation or reevaluation (at least every 3 years); provide Parents with information on how to request an Independent Educational Evaluation at public expense. [ECF No. 1-2, pp. 7, 10].

On January 9, 2025, IHO Lauren M. Fassino, Esq. issued a Pendency Order, ordering, for the period from October 9, 2024 until a final decision is issued or settlement reached:

1. "Direct payment of Full Tuition to iBrain as per the terms of the enrollment contract between iBrain and parent;"
2. "Direct payment to Provider as per the terms of the transportation agreement with the Parent;"
3. "Direct payment to Provider as per the terms of the nursing agreement with the parent;"

3

[ECF No. 1-3].

Despite the IHO's clear ruling, DOE has failed to fully implement R.Z.'s pendency placement, resulting in significant delays in funding and financial hardship for the Plaintiffs.

## **LEGAL BACKGROUND**

Congress enacted the IDEA 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 68 (1999)). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)); accord *Endrew*

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ("a student offered an educational program providing 'merely more than *de minimis* progress from year to year can hardly be said to have been offered an education at all'").

"The 'centerpiece' of the IDEA and its principal mechanism for achieving this goal is the IEP," *i.e.*, Individualized Education Program. *T.K.*, 810 F.3d at 875. "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child. *Endrew F. ex rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982)). "Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex rel.*

4

*C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Following a 30-day resolution period, the parent and school district will participate in an "impartial due process hearing" before an IHO. *Id.* Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer ("SRO"), who can affirm or modify the IHO's Order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2)). After that, "[e]ither party may bring a civil action before a federal or state court to review the SRO's decision." 20 U.S.C. § 1415(i)(2)(A)).

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision" also known as the "stay put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (quoting 20 U.S.C. § 1415(j)). The core concern of the IDEA is to provide a continuous, uninterrupted education to disabled children; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved. See *id.* (citing *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014) (quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326–27 (1988); *John T. ex rel. Paul T. v. Delaware*

*Cnty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003)).

Although the IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); see also *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe*, 790 F.3d at 452.

Determining a child's pendency placement requires the Court to identify the student's "then current educational placement." *Ventura de Paulino*, 959 F.3d at 532. This term can mean either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). "The placement can [] be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision." *Ventura de Paulino*, 959 F.3d at 532.

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING R.Z.'S PENDENCY AT iBRAIN FOR THE 2024-2025 SCHOOL YEAR

Here, the "stay-put" provision of the IDEA acts as an automatic preliminary injunction. The IDEA's "stay put" provision in 20 U.S.C. § 1415(j) provides that: [e]xcept as provided in

6

subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. 20 U.S.C. § 1415(j). "[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61 (quotation omitted). The "stay put" provision "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D.*, 694 F.2d at 906. "[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested the due process hearing." *Id.*

Under the IDEA, a child's pendency placement is established by looking to either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. Plaintiffs bring this action to enforce IHO Fazzino's Pendency Order regarding Plaintiffs' DPC's for 2024–2025 extended school year. [ECF No. 1-2]. While Plaintiffs timely and diligently pursue the DPC at the administrative level, R.Z. has been attending school at iBRAIN since October 9, 2024. IHO Fazzino's Pendency Order correctly determined that iBRAIN is the Student's last agreed upon placement, with the basis for pendency in SRO Decision 23-299. [ECF No. 1-3]. Pursuant to the clear mandate of 20 U.S.C. § 1415(j), this placement at iBRAIN is the basis of R.Z.'s pendency program/placement throughout the administrative and judicial proceedings relative to IHO Case No. 289807, retroactive to October 9, 2024.

7

R.Z.'s Enrollment Contract for the 2024-2025 ESY sets full tuition at $246,425.74 to be paid in two installments by October 9, 2024, and $172,295.94 by January 2, 2025. R.Z.'s Nursing Agreement for the 2024-2025 ESY sets the annual cost of nursing services at $221,680.00 to be paid in two installments by September 5, 2024 and January 2, 2025. R.Z.'s Transportation Agreement for the 2024-2025 ESY sets the annual cost of transportation services at $93,073.00 with two payment installments by September 30, 2024 and January 1, 2025. To date, no funding has been paid by the DOE towards R.Z.'s pendency placement/program. It is crucial to note that the end of the school year is approaching, the DOE has been ordered to pay under pendency for nearly two months, and no payments have been made. In contravention of IHO Fazzino's Pendency Order, DOE has failed to fund R.Z.'s pendency program/placement in violation of 20 U.S.C. § 1415(j).

Plaintiffs are undeniably entitled to pendency placement at iBRAIN with related services, one-to-one nursing services and special transportation services because that was the last agreed upon placement at the time they filed their DPC. Accordingly, Plaintiffs are entitled to a pendency order under 20 U.S.C. § 1415(j)'s "automatic injunction" standard and are entitled to a preliminary injunction ordering DOE to implement and fully fund R.Z.'s placement at iBRAIN during the pendency of R.Z.'s 2024-2025 IEP dispute.

## II. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION UNDER THE TRADITIONAL REQUIREMENTS

Although well-established law does not require Plaintiffs to meet the traditional requirements for a preliminary injunction, Plaintiffs have done so in this case. "Ordinarily, to obtain a preliminary injunction, the movant has to "show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

8

requesting the preliminary relief." *Ventura de Paulino*, 959 F.3d at 529 (citing *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). "[T]he enforcement of the pendency provision is automatic and should occur without regard to such factors as irreparable harm likelihood of success on the merits and balancing of the hardships." *Abrams v. Carranza*, No. 19-CV-4175, 2019 U.S. Dist. LEXIS 95403, at *8 (S.D.N.Y. June 6, 2019). DOE's failure to implement the IHO's Pendency Order to fully fund R.Z.'s program/placement at iBRAIN continues to deny their rights to FAPE under the IDEA and requires the entry of a preliminary injunction to enforce the IHO's order.

To establish irreparable harm, a plaintiff must demonstrate an injury neither remote nor speculative but actual and imminent. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Where a school district has refused to implement a final administrative order or decision, such as a hearing officer's decision, courts have found irreparable harm. *Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*, No. 90-CV-4, 1990 WL 36803, at *2 (N.D.N.Y. Mar. 30, 1990); *Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*, 560 F. Supp. 701, 705 (W.D.N.Y. 1983). In such circumstances, a plaintiff's injury is actual and imminent because the plaintiff is deprived of the free appropriate public education to which they are entitled under the IDEA. *Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004). "Interrupt[ing] a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury." *N.J. v. New York*, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011). The law is clear that denial of a placement to which a student is entitled constitutes irreparable harm. *Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*, No. 1:21-CV-00711 (MKV), 2021 WL 1164571, at *9–11 (S.D.N.Y. Mar. 26, 2021) (citing

9

*Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001) ("[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm.")).

It is clear based on the foregoing that the failure or refusal to fund a special education program to which a student is entitled also constitutes irreparable harm. DOE's failure to fund R.Z.'s pendency placement places R.Z. in imminent danger of being denied the specialized education program and nursing services ordered by the IHO if tuition or nursing services are not paid. Accordingly, DOE's failure to fund R.Z.'s tuition, transportation, and nursing services for the 2024-2025 school year threatens the IDEA's stay-put provision under 20 U.S.C. § 1415(j), which ensures that a child remains in their current educational placement throughout legal proceedings. Courts have held that placement necessarily includes funding, as withholding tuition payments would force a change in placement, violating the statute. *Zvi D. by Shirley D.*, 694 F.2d at 906. In *T.M. ex rel. A.M.*, 752 F.3d at 152, the court reaffirmed that the stay-put provision prohibits school districts from disrupting a student's education by withholding funding. The consequences of DOE's failure could be severe: Plaintiffs remain financially responsible for tuition and nursing services despite a binding administrative order confirming DOE's obligation to fund these costs. Such non-compliance puts the Student's continued education at risk in contravention of the IDEA.

As to the second prong of the test, that there are sufficiently serious questions going to the merits, the IDEA's "stay put" provision inherently acknowledges that the overarching importance of the pendency placement during the due process determination is of significant importance in its own right and is independent of the final outcome of the administrative proceedings. It is well-established that "the stay-put provision is designed to ensure educational stability for children with disabilities until the dispute over their placement is resolved, '*regardless of whether their case is*

10

*meritorious or not*.'" *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)(quoting *Woods*, 20 Indiv. Disabilities Educ. L. Rep. at 440) (emphasis added); *see also A.D. ex rel. L.D. v. Hawaii Dep't of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013) (stating that "a student who requests an administrative due process hearing is entitled to remain in his educational placement regardless of the strength of his case or the likelihood he will be harmed by a change in placement"); *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009) ("[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process."). Accordingly, in determining the enforcement of an IHO's Pendency Order, the balance of hardships tips decidedly toward Plaintiffs.

Requiring the DOE to follow the IDEA is in the public interest. When a preliminary injunction is sought to "affect government action taken in the public interest under a statute or regulatory scheme," the court inquires whether the injunction is in the public interest rather than balancing the equities. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *3. Where Congress has created a special enforcement system, as with the IDEA, the public interest is on the side of maintaining that system's integrity. *Olson*, 2004 WL 1212081. The integrity of the IDEA is maintained by ensuring that administrative orders are adhered to by all parties. Allowing DOE to be delinquent in its legal obligations, particularly considering the long delays it has built into the administration of the underlying due process hearings, which DOE controls, not only erodes the integrity of the administrative process but also the purpose of the IDEA. The public learns that DOE can simply wait out the delays it creates, forcing parents, who usually do not have sufficient resources to maintain their disabled children in unilateral educational placements, to give up trying to procure funding for appropriate educational services.

Granting of the preliminary injunction is not only appropriate but necessary to ensure the timely enforcement of Plaintiffs and R.Z.'s statutory rights and the integrity of the IDEA.

## CONCLUSION

Based on the foregoing, the Plaintiffs request that this Court issue a preliminary injunction declaring that Student R.Z.'s pendency placement/program under 20 U.S.C. § 1415(j) of the IDEA during the pendency of all administrative and judicial proceedings relative to R.Z.'s Due Process Complaint ("DPC") for the 2024–2025 school year is at iBRAIN and includes R.Z.'s related services, transportation, and nursing, with direct funding tuition to iBRAIN and/or the appropriate service provider.

Dated:  March 13, 2025
         New York, New York

>                          Respectfully submitted,
>                          Liberty & Freedom Legal Group
>                          *Attorneys for Plaintiffs*
>
>          By:      **/S/ Kenneth Willard**
>                   Kenneth Willard
>                   300 E. 95 Street, Suite 130
>                   New York, NY 10128
>                   (646)850-5035
>                   ken@pabilaw.org