UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
**ROSA ZAYAS** and **EDWIN ZAYAS**, as Parents and
Natural Guardians of **R.Z.,** and **ROSA ZAYAS** and
**EDWIN ZAYAS,** Individually,

                               Plaintiff,                        1:25-cv-01880

        -against-

**MELISSA AVILÉS-RAMOS**, in her official capacity as
Chancellor of the **NEW YORK CITY  DEPARTMENT
OF EDUCATION**, and the **NEW  YORK CITY
DEPARTMENT OF EDUCATION,**

                           Defendants.

-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF A <u>TEMPORARY RESTRAINING ORDER</u>

Kenneth Willard, Esq.
Liberty & Freedom Legal Group
*Attorney for Plaintiff*
105 East 34th St, #190
New York, NY 10016
ken@pabilaw.org

# **TABLE OF CONTENTS**

*Page(s)*

TABLE OF CONTENTS ................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

LEGAL BACKGROUND ............................................................................................... 6

ARGUMENT ................................................................................................................... 10

   I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
        ESTABLISHING R.Z.'S PENDENCY AT iBRAIN FOR THE 2024-2025
        YEAR ............................................................................................................... 10

   II.   PENDENCY ACTS AS AN AUTOMATIC PRELIMINARY INJUNCTION THAT
        REQUIRES DEFENDANTS TO FUND PLAINTIFF'S EDUCATIONAL
        PLACEMENT DURING THE DUE PROCESS PROCEEDINGS ........................... 12

   III.  PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION UNDER THE
        TRADITIONAL REQUIREMENTS ................................................................ 17

        A. Likelihood of Success ...............................................................................17

        B. Irreparable Harm .......................................................................................18

        C. The Balance of the Equities Favor Injunctive Relief ..................................19

        D. Preliminary Injunctive Relief Is in the Public's Interest .............................21

CONCLUSION ............................................................................................................... 22

**Table of Authorities**

**Cases**

*Abrams v. Porter*,
   No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021) ..................................................... 16

*Agudath Israel of Am. v. Cuomo*,
   983 F.3d 620 (2d Cir. 2020) ..................................................................................................... 22

*Ahmad v. Long Island Univ.*,
   18 F. Supp. 2d 245 (E.D.N.Y. 1998) ....................................................................................... 9, 10

*Ali v. Wuchte, No. 22CV01532HGLGD*,
   2022 WL 3682303 (E.D.N.Y. Aug. 25, 2022) ................................................................................. 9

*Araujo v. N.Y.C. Dep't of Educ.*,
   2020 U.S. Dist. LEXIS 175767 (S.D.N.Y. Sep. 24, 2020) ............................................................. 12

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
   290 F.3d 476 (2d Cir. 2002) ..................................................................................................... 13

*Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*,
   560 F. Supp. 701 (W.D.N.Y. 1983) ............................................................................................ 18

*C.F. ex rel. R.F. v. New York City Dep't of Educ.*,
   746 F.3d 68 (2d Cir. 2014) ......................................................................................................... 7

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
   400 F.3d 508 (7th Cir. 2005) ....................................................................................................... 7

*Connecticut State Police Union v. Rovella*,
   36 F.4th 54 (2d Cir. 2022) ............................................................................................................ 9

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
   689 F. Supp. 197 (S.D.N.Y. 1988) ......................................................................................... 3, 10

*Davis v. Banks, No. 22-CV-8184*
   (JMF), 2023 U.S. Dist. LEXIS 160092 (S.D.N.Y. Sep. 11, 2023) ............................................... 14

*Doe v. E. Lyme Bd. of Educ.*,
   790 F.3d 440 (2d Cir. 2015) ..............................................................................................1, 8, 11

*Double Green Produce, Inc. v. Forum Supermarket Inc.*,
   387 F. Supp. 3d 260 (E.D.N.Y. 2019) ...................................................................................... 20

*Gabel ex rel. L.G. v. Bd. of Educ.*,
   368 F. Supp. 2d 313 (S.D.N.Y. 2005) ...................................................................................... 17

*Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977
  (MKB), 2019 WL 1862929 (E.D.N.Y. Apr. 24, 2019) ......................................................... 9

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*,
  580 U.S. 386 (2017) ......................................................................................................... 6

*Heldman on Behalf of T.H. v. Sobol*,
  962 F.2d 148 (2d Cir. 1992) ............................................................................................. 19

*Honig v. Doe*,
  484 U.S. 305 (1988) ........................................................................................................ 19

*K.L.A. v. Windham Se. Supervisory Union*,
  371 F. App'x 151 (2d Cir. 2010) ..................................................................................... 18

*Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*,
  No. 90-CV-4, 1990 WL 36803 (N.D.N.Y. Mar. 30, 1990) ............................................. 18

*M.H. v. N.Y.C. Dep't of Educ.*,
  712 F. Supp. 2d 125 (S.D.N.Y. 2010) ............................................................................. 21

*M.R. v. Ridley Sch. Dist.*,
  744 F.3d 112 (3d Cir. 2014) ........................................................................................ 8, 13

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
  386 F.3d 158 (2d Cir.) ............................................................................................... 10, 17

*Mendez v. Banks*,
  65 F.4th 56 (2d Cir. 2023) .................................................................................... 13, 15, 16

*Moonsammy v. Banks*,
  2024 U.S. Dist. LEXIS 99415 (S.D.N.Y. June 3, 2024) ............................................ 13, 14, 15

*N.J. v. New York*,
  872 F. Supp. 2d 204 (E.D.N.Y. 2011) ............................................................................. 18

*New York v. United States Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020) .............................................................................................. 10

*Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB,
  2004 WL 1212081 (D. Minn. May 28, 2004) ............................................................. 18, 22

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
  96 F.3d 78 (3d Cir. 1996) .................................................................................................. 8

*T.K. v. New York City Dep't of Educ.*,
  810 F.3d 869 (2d Cir. 2016) .......................................................................................... 6, 7

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
  752 F.3d 145 (2d Cir. 2014) ........................................................................... 7, 17, 18

*Tucker Anthony Realty Corp. v. Schlesinger*,
  888 F.2d 969 (2d Cir. 1989) ................................................................................... 18

*Ventura de Paulino v. New York City Dep't of Educ.*,
  959 F.3d 519 (2d Cir. 2020) ........................................................... 1, 2, 8, 12, 17, 21

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................... 17

*Y.F. v. New York City Dep't of Educ.*,
  No. 1:21-CV-00711 (MKV), 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021) ......................... 18, 22

*Zvi D. by Shirley D. v. Ambach*,
  694 F.2d 904 (2d Cir. 1982) ...................................................................... 1, 10, 11, 15

**Statutes**

20 U.S.C. § 1415 ...................................................... 1, 2, 4, 5, 7, 10, 11, 12,  15, 17, 19, 22

N.Y. Educ. Law § 4404 .......................................................................................... 1

**Other**

34 C.F.R. § 300.518 .............................................................................................. 1

Fed. R. Civ. P. 65 ........................................................................................... 1, 8, 9

**PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for a Preliminary Injunction under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) (the "stay-put" or pendency provision) and Fed. R. Civ. P. 65(a). Plaintiffs seek an order stating that the Defendants, MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, "DOE"), owes outstanding pendency payments to iBRAIN for unpaid tuition and to the supplemental service providers for nursing and specialized transportation, and those amounts should be funded.

Under the IDEA's pendency provision, funding for a disabled student's current educational placement is an automatic entitlement triggered by the filing of a due process complaint. 20 U.S.C. § 1415(j); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). Courts have repeatedly recognized that the stay-put provision operates as an "automatic preliminary injunction," maintaining the student's educational status quo until litigation is resolved. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).

Here, Plaintiffs' pendency rights were unambiguously established by Impartial Hearing Officer ("IHO") Lauren M. Fazzino's ("Fazzino") Order on Pendency ("Pendency Order"), which found iBRAIN to be Student's last unappealed placement in SRO Decision 23-299. [ECF No. 5-3]. During the pendency of a due process proceeding, federal and state law mandate that the student must remain in their then-current educational placement, unless the parent and DOE agree otherwise. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(4)(a) (McKinney). Courts recognize that pendency serves a critical function in ensuring educational continuity for students with disabilities, preventing unilateral disruptions in placement.

At the time this lawsuit was filed, DOE had not made any of the required pendency payments. Since the filing, DOE has paid a portion of the pendency payments owed. On April 3, 2025, the IHO in the underlying matter issued a Findings of Fact and Determination ("FOFD") on the Due Process Complaint ("DPC") and found that the DOE offered R.Z. a free and appropriate public education ("FAPE") and Plaintiffs are not entitled to funding of the unilateral placement at iBRAIN. On May 13, 2025, Plaintiffs filed their Request for Review ("RFR") of the FOFD. Accordingly, the due process proceedings are continuing.

The DOE's refusal to issue any further payments in this case reflects an idiosyncratic view of the IDEA's "say put" provision that not only violates 20 U.S.C. § 1415(j), but the very terms of IHO Fazzino's Pendency Order.  Without any objection from the DOE, IHO Fazzino "SO ORDERED" the Parent's assertion of pendency in her Pendency Order "from October 9, 2024, and continuing until such time as a final decision is issued or settlement reached," and accordingly directed reimbursement of tuition, transportation and nursing per the terms of each of the iBRAIN enrollment agreement and other relevant vendor agreements.  *See* ECF No. 5-3.

Despite this clear and conspicuous order, the DOE has taken a directly contrary position in communications from the DOE's Implementation Unit to iBRAIN.  On April 14, 2025, the DOE's Implementation Unit stated, "Pendency is effective 12/18/24 until the conclusion of the case."  *See* Exhibit 1, attached to the Declaration of Kenneth Willard ("Willard Decl.").  This position is a direct affront to IHO Fazzino's Pendency Order, which clearly ordered pendency retroactive to October 9, 2024, and a direct violation of the IDEA's "stay put" provision which requires "a school district 'to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete.'"  *See De Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020)(quoting *T.M. v. Cornwall Cent. Sch. Dist.*, 752

F.3d 145, 171 (2d Cir. 2014)(internal citations omitted); *see also De Paulino*, 959 F.3d at 531 (noting that this reflects "Congress's policy choice [] that a child is entitled to remain in his or her placement at public expense *during the pendency of an IEP dispute*, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings.")(quoting *Mackey*, 386 F.3d at 160-61)(emphasis added).

Given the DOE's position on pendency in this matter and its violation of the IDEA's "stay put" provision, Plaintiff at the very least is entitled to an injunction from this Court determining the scope of pendency, including a determination as to whether pendency starts, as IHO Fazzino "so ordered," at the beginning of the school year on October 9, 2024.

The 2024-2025 ESY will end in a matter of days, and the DOE has failed to fully fund Student's pendency program as required by law, resulting in delays, financial hardship, and potential disruption to Student's education. Moreover, as outlined above, the DOE's disregard for the IHO's binding pendency determination and DOE's unilateral decision to only partially fund the pendency constitutes a clear violation of the IDEA and warrants injunctive relief on its own.

Because pendency is an automatic entitlement under the IDEA, Plaintiffs need not satisfy the traditional preliminary injunction standard. *See Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988) (holding that pendency injunctions are not subject to traditional preliminary injunction factors). This is especially true here where Plaintiff is in need of a declaration from this Court defining the scope of the DOE's pendency obligations. However, even under the traditional standard, Plaintiffs can readily establish: (1) irreparable harm due to the DOE's failure to honor the Pendency Order, (2) a clear likelihood of success on the merits, and (3) that the balance of hardships and public interest weigh decisively in favor of enforcement of the Student's statutory rights.

For the foregoing reasons, Plaintiffs seek an order compelling DOE's full and immediate compliance with its pendency funding obligations, ensuring the uninterrupted provision of tuition, related services, transportation, and nursing services at iBRAIN, consistent with the IHO's Pendency Order and 20 U.S.C. § 1415(j).

## STATEMENT OF FACTS

Plaintiffs Rosa and Edwin Zaya are the parents and natural guardians of R.Z., a student with multiple severe disabilities, including cerebral palsy, hydrocephalus, seizure disorder, and dystonia. [ECF No. 5-2, pp. 3-4]. R.Z. is legally blind due to Retinopathy of Prematurity and high myopia [*Id.* at 4]. R.Z. suffers from a brain injury that has resulted in significant impairments in cognition, language, memory, attention, reasoning, problem-solving, motor skills, sensory processing, psychosocial behavior, and speech. [*Id.* at 3].

R.Z. is non-verbal, is learning to communicate using an Assistive Technology ("AT") device, and "requires a high degree of individualized attention and intervention throughout the school day." [ECF No. 5-2, p. 4]. He is non-ambulatory, requires a full-time 1:1 nurse to manage his complex medical needs, including G-tube feedings and seizure monitoring, and requires a 1:1 paraprofessional to assist with mobility and tasks throughout the school day. [*Id.* at 4-5]. Given the intensity of his needs, R.Z. requires an individualized, structured educational program in a small, highly supportive classroom environment, along with an extended school day and extended school year ("ESY") to prevent regression. [*Id.*].

On June 14, 2024, Plaintiffs filed a Ten Day Notice ("TDN") alleging that the DOE failed to offer R.S. a FAPE for the 2024-25 ESY because, *inter alia*, the DOE's proposed IEP did not adequately address "class size ratio, class functional and academic grouping, staffing, accessibility, availability of adequate resources, and the lack of individualized attention and support." *See*

Willard Decl., Exhibit 2, attached thereto. The TDN made clear that "[t]his notice is sent in addition to the Parents having expressed their concerns, disagreements, and rejection of the Committee on Special Education's ('CSE') recommendations at the most recent Individualized Education Program ('IEP') meeting." *See Id.*

On December 16, 2024, Plaintiffs filed a "DPC seeking to maintain R.Z.'s placement at iBRAIN, including related services, special transportation, and 1:1 nursing. This DPC was assigned IHO Case No. 289807. Plaintiffs asserted that DOE failed to offer or provide R.Z. a FAPE for the 2024–2025 ESY. [ECF No. 5-2, p. 7-9]. The DPC alleged that the DOE failed to, *inter alia*: provide a Procedural Safeguards Notice; provide a School Location Letter; conduct an evaluation or reevaluation (at least every 3 years); provide Parents with information on how to request an Independent Educational Evaluation at public expense. [*Id.* at 7, 10].On

On January 9, 2025, IHO Lauren M. Fassino, Esq. issued a Pendency Order, ordering, for the period from October 9, 2024 until a final decision is issued or settlement reached:

1.  "Direct payment of Full Tuition to iBrain as per the terms of the enrollment contract between iBrain and parent;"
2.  "Direct payment to Provider as per the terms of the transportation agreement with the Parent;"
3.  "Direct payment to Provider as per the terms of the nursing agreement with the parent;"

[ECF No. 1-3].

By March of 2025, despite the IHO's clear ruling, DOE had failed to fully implement R.Z.'s pendency placement. Following the filing of the Complaint, DOE did issue partial pendency payments. On April 3, 2025, the IHO in the underlying matter issued an FOFD on the DPC and found that the DOE offered R.Z. a FAPE and Plaintiffs are not entitled to funding of the unilateral placement at iBRAIN. On May 13, 2025, Plaintiffs filed their RFR of the FOFD. Accordingly, the due process proceedings are continuing.

As of the date of the filing of this Motion, a mere few days before the end of the 2024-2025 school year, the DOE owes outstanding pendency payments to iBrain for unpaid tuition ($68,009.97), Sisters Travel & Transportation for unpaid transportation costs ($25,687.24), and B & H Home Health for unpaid one-to-one nursing costs ($61,180.54), and those amounts should be funded.

## LEGAL BACKGROUND

Congress enacted the IDEA 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 68 (1999)). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016)(quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)); accord *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ("a student offered an educational program providing 'merely more than *de minimis* progress from year to year can hardly be said to have been offered an education at all'").

"The 'centerpiece' of the IDEA and its principal mechanism for achieving this goal is the IEP," *i.e.*, Individualized Education Program. *T.K.*, 810 F.3d at 875. "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child. *Endrew F. ex rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982)). "Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and

seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex rel. C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Following a 30-day resolution period, the parent and school district will participate in an "impartial due process hearing" before an IHO. *Id.* Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer ("SRO"), who can affirm or modify the IHO's Order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2)). After that, "[e]ither party may bring a civil action before a federal or state court to review the SRO's decision." 20 U.S.C. § 1415(i)(2)(A).

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision" also known as the "stay put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement." *T.M.*, 752 F.3d at 152 (quoting 20 U.S.C. § 1415(j)). The core concern of the IDEA is to provide a continuous, uninterrupted education to disabled children; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved. See *id.* (citing *Mackey v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014) (quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No.*

*302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326–27 (1988); *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003)).

Although the IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); see also *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe*, 790 F.3d at 452.

Determining a child's pendency placement requires the Court to identify the student's "then current educational placement." *Ventura de Paulino*, 959 F.3d at 532. This term can mean one of three things: the placement described in the student's most recently implemented IEP, the operative placement actually functioning at the time when the due process proceeding was commenced, or the placement at the time of the previously implemented IEP. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). "The placement can [] be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision." *Ventura de Paulino*, 959 F.3d at 532.

## TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION STANDARD

Federal Rule of Civil Procedure 65 provides:

**(b)  Temporary Restraining Order.**

8

    **(1)**    ***Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

        **(A)**    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

        **(B)**    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

**(a)  Preliminary Injunction.**

    **(1)**    ***Notice.*** The court may issue a preliminary injunction only on notice to the adverse party.

Fed. R. Civ. P. 65(a).

The decision to grant or deny a TRO is within this Court's sound discretion. *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998). A plaintiff seeking a temporary restraining order or a preliminary injunction must generally prove that the same elements are satisfied. *Ali v. Wuchte*, No. 22CV01532HGLGD, 2022 WL 3682303, at *1 (E.D.N.Y. Aug. 25, 2022); *Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977 (MKB), 2019 WL 1862929, at *1 (E.D.N.Y. Apr. 24, 2019); *Ahmad*, 18 F. Supp. 2d at 247. Those elements require a plaintiff to: "establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of [his] claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Ali*, 2022 WL 3682303, at *1; *see Connecticut State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 215 (2022)(internal quotation marks omitted).

The most important factor is irreparable harm. *Ahmad*, 18 F. Supp. 2d at 247. "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and

that such injury is not capable of being fully remedied by money damages." *Id.* (quoting *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995)); *see also New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).

That said, traditional preliminary injunction standards do not apply to enforcement of pendency under the Individuals with Disabilities Education Act ("IDEA"). *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988) (citing *Cochran v. D.C.*, 660 F. Supp. 314, 319 (D.D.C. 1987)). The stay-put provision, as explained by the Second Circuit in *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982), serves as an operative mechanism, which "is, in effect, an automatic preliminary injunction."

## ARGUMENT

### I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING R.Z.'S PENDENCY AT iBRAIN FOR THE 2024-2025 YEAR

Here, the "stay-put" provision of the IDEA acts as an automatic preliminary injunction. The IDEA's "stay put" provision in 20 U.S.C. § 1415(j) provides that: [e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. 20 U.S.C. § 1415(j). "[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." *Mackey*, 386 F.3d at 160–61 (quotation omitted). The "stay put" provision "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D.*, 694 F.2d at 906. "[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an

educational placement made by the agency and consented to by the parent before the parent requested the due process hearing." *Id.*

Under the IDEA, a child's pendency placement is established by looking to either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. Plaintiffs bring this action to enforce IHO Fazzino's Pendency Order in IHO Case No. 289807 regarding Plaintiffs' DPC for the 2024–2025 extended school year. [ECF No. 1-2]. While Plaintiffs timely and diligently pursue the DPC at the administrative level, R.Z. has been attending school at iBRAIN since October 9, 2024. IHO Fazzino's Pendency Order correctly determined that iBRAIN is the Student's last agreed upon placement, with the basis for pendency in SRO Decision 23-299. [ECF No. 1-3]. Pursuant to the clear mandate of 20 U.S.C. § 1415(j), this placement at iBRAIN is the basis of R.Z.'s pendency program/placement throughout the administrative and judicial proceedings relative to IHO Case No. 289807, retroactive to October 9, 2024.

R.Z.'s Enrollment Contract for the 2024-2025 ESY sets full tuition at $246,425.74 to be paid in two installments by October 9, 2024, and $172,295.94 by January 2, 2025. R.Z.'s Nursing Agreement for the 2024-2025 ESY sets the annual cost of nursing services at $221,680.00 to be paid in two installments by September 5, 2024 and January 2, 2025. R.Z.'s Transportation Agreement for the 2024-2025 ESY sets the annual cost of transportation services at $93,073.00 with two payment installments by September 30, 2024 and January 1, 2025. As of the date of the filing of this Motion, a mere few days before the end of the 2024-2025 school year, the DOE owes approximately 30% of its outstanding pendency payment obligation for tuition, transportation costs, and nursing costs. Despite not appealing the Pendency Order, the DOE has effectively

contested the pendency payment amounts in violation of 20 U.S.C. § 1415(j).

Plaintiffs are undeniably entitled to pendency placement at iBRAIN with related services, one-to-one nursing services and special transportation services because that was the last agreed upon placement at the time they filed their DPC. Accordingly, Plaintiffs are entitled to a pendency order under 20 U.S.C. § 1415(j)'s "automatic injunction" standard and are entitled to a preliminary injunction ordering DOE to fund the tuition at iBRAIN, and related services of transportation and nursing, during 2024-2025.

## II.    PENDENCY ACTS AS AN AUTOMATIC PRELIMINARY INJUNCTION THAT REQUIRES DEFENDANTS TO FUND PLAINTIFF'S EDUCATIONAL PLACEMENT DURING THE DUE PROCESS PROCEEDINGS

Plaintiffs are entitled to a preliminary injunction to order DOE to fund R.Z.'s pendency at iBRAIN with the related services and to make the remainder of the payments, irrespective of whether Plaintiffs can show irreparable harm.  A similar issue was brought up in *Araujo v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 175767 (S.D.N.Y. Sep. 24, 2020), where the court issued a preliminary injunction ordering the DOE to fund tuition for the 2020-21 school year, none of which payments had been made up to that point.  *See Araujo*, 2020 U.S. Dist. LEXIS 175767 at *9-11.  The court rejected the defendant's argument that the plaintiffs had not shown irreparable harm, reasoning,

> Plaintiffs seek immediate vindication of their undisputed rights to pendency funding via preliminary injunction. They correctly note that the stay-put provision typically operates as an "automatic injunction" foreclosing consideration of irreparable harm and the other factors of the traditional preliminary injunction inquiry, and thus that an injunction should issue as a matter of course. *Ventura*, 959 F.3d at 529. Accordingly, a preliminary injunction granting pendency funding for the thirteen students the parties agree have pendency at iBRAIN is warranted.

2020 U.S. Dist. LEXIS 175767 at *10.

The DOE's failure to fully fund tuition for the 2024-25 school year under the IDEA's "stay put" provision resembles the failures that the *Araujo* court rectified with a preliminary injunction. Like *Araujo*, where the DOE did not challenge pendency for the thirteen students at issue, the agreement implied by law by SRO Decision No. 23-299 compels the DOE to make pendency payments in full at the end of the school year, and the DOE's failure to do so is a violation of the IDEA's "stay put" provision. *See Bd. of Educ. of Pawling Cent. Sch. Dist.*, 290 F.3d at 483-84 ("[O]nce the parents' challenge [to a proposed IEP] succeeds … consent to the private placement is implied by law, and the requirements of [the stay-put provision] become the responsibility of the school district.")

This compels the DOE to pay tuition, transportation and nursing costs for the 2024-25 under the IDEA's "stay put" provision. *See M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123 (3d Cir. 2014)("financing goes hand-in-hand with pendent private-school placement: It is undisputed that once there is a state agreement with respect to pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows."); *see also Mendez v. Banks*, 65 F.4th 56, 62-63 (2d Cir. 2023)(agreeing with the proposition that "funding goes hand-in-hand with placement.").

At the very least, Plaintiff is entitled to a preliminary injunction determining the scope of pendency for Plaintiff, including, as relevant here, whether Plaintiff is entitled to pendency beginning October 9, 2024, irrespective of whether Plaintiff is entitled to a preliminary injunction compelling immediate payment. This issue was addressed in *Moonsammy v. Banks*, 2024 U.S. Dist. LEXIS 99415 (S.D.N.Y. June 3, 2024). In that case, the parties disputed whether a partially appealed SRO decision could constitute pendency placement with regard to those aspects of the decision that were left unchallenged. *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at *16-18.

The court held that it could, and found that those aspects of the SRO decision in which the SRO found that the DOE had denied the student a FAPE and that iBRAIN was an appropriate placement, which were not implicated in the parents' appeal, could form the basis of pendency. *See* 2024 U.S. Dist. LEXIS 99415 at *18. The court found that this holding was "consistent with the purpose of the stay-put provision—'to maintain the child's educational status quo.'" *Id.* at *19-20 (quoting *Ventura de Paulino*, 959 F.3d at 529, 532). Finally, "[b]ecause the stay-put provision operates as 'an automatic preliminary injunction,'" the court found, over the DOE's objection, that the parents "are entitled to a preliminary injunction requiring the Department to fund the services granted by SRO Bates's decision—namely, A.M.'s (1) tuition and (2) transportation to and from school." *Id.* at *20. Notably, consistent with *Mendez*, the court declined to issue a preliminary injunction ordering the DOE to pay these amounts immediately. *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at *20-21 (citing *Mendez*, 65 F.4th at 63).

In line with *Moonsammy*, this Court should order a preliminary injunction entitling Plaintiff to a determination as to the scope of pendency the DOE is obligated to pay in accordance with IHO Fazzino's Pendency Order. The DOE's position that "[p]endency is effective 12/18/24 until the conclusion of this case" is a direct violation of IHO Fazzino's Pendency Order and a violation of the IDEA's "stay put" provision. It is well-established that "the sole source of the DOE's reimbursement obligations in each Plaintiff's case is the applicable administrative order." *See Davis v. Banks*, No. 22-CV-8184 (JMF), 2023 U.S. Dist. LEXIS 160092, at *13 (S.D.N.Y. Sep. 11, 2023)(collecting cases and citing *Mendez*, 65 F.4th at 61 ("determining DOE's obligations based on the underlying pendency orders"); *L.K. v. N.Y.C. Dep't of Educ.*, 674 F. App'x 100, 101 (2d Cir. 2017)(same))(as interpreted by *Davis*). The Pendency Order here unequivocally establishes that Plaintiff is entitled to pendency from October 9, 2024 to the conclusion of these

proceedings.  The DOE's position challenging that fact entitles Plaintiff to a preliminary injunction from this Court determining the scope of pendency owed by the DOE, in particular, the DOE's obligation to fund pendency starting from October 9, 2024.  *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at *18-20.

The Second Circuit has characterized § 1415(j) as "an automatic preliminary injunction . . . ." *Mendez*, 65 F.4th at 62; *Zvi D. by Shirley D.*, 694 F.2d at 906. The Second Circuit's holding in *Mendez* that the IDEA's stay-put provision does not entitle families to expedited payment of pendency funding does not alter the fact that families, like Plaintiffs, are entitled to automatic implementation of pendency. *Mendez*, 65 F.4th at 59.  Here, Plaintiffs are not asking for immediate funding of pendency.  As of the date of this filing, the 2024-2025 school year has ended and DOE has failed to pay almost a third of the pendency payments for which it is obligated. DOE was aware of its obligations to pay pendency not only when Plaintiffs filed their DPC, but going all the way back to when Plaintiffs filed their TDN on June 14, 2024.

The point of the ruling in *Mendez* was that, when DOE does not contest pendency, parents are not entitled to "fast-track" payments; DOE may make payments in its "ordinary course of business." The Court noted that DOE had indicated "that it [was] committed to making the requisite payments and will do so voluntarily in the ordinary course of business, without the need for Court intervention . . . ."  *Mendez*, 65 F.4th at 60 (internal citation and quotation marks omitted) (alteration in original).

Here, Plaintiffs are not asking the Court to order the DOE to "fast-track" payment, or otherwise "frustrat[e]" DOE's "fiscal policies. DOE has been aware of its pendency payment obligation, at a minimum, since December of 2024, when Plaintiffs filed their DPC, and even further than that, when Plaintiffs filed their TDN in June of 2024. DOE has been aware that the

underlying administrative proceeding was continuing when Plaintiffs filed their RFR on May 13, 2025. Notwithstanding, the DOE only began funding the pendency after Plaintiffs filed this lawsuit, and the DOE has not yet funded the remaining one third of the school year and has provided no indication if it will.[1]

Moreover, unlike *Mendez*, where the DOE fully acknowledged its pendency obligations and promised it would pay, the DOE disputes its pendency obligations under the Pendency Order. Indeed, *Mendez* relied in part on *Abrams v. Porter*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021).  The Second Circuit noted of that case, "Because 'both sides agreed that there was no risk of the students losing their pendency placement,' the Court held that 'the district court did not abuse its discretion in denying an injunction under the IDEA's stay-put provision.'" *Mendez*, 65 F.4th at 63 (quoting *Abrams*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 at *6). Here, neither side agrees to the scope of pendency, and it is apparent by the timing of DOE's sudden reversal of its pendency payments, and its previous statements that pendency only begins December 18, 2024, that the DOE has stopped making the last third of payments due because it believes they are in fact not owed.  Thus, even if it could be said that Plaintiff is somehow attempting to "fast track" immediate payment, in violation of *Mendez*, by requesting a preliminary injunction compelling the DOE to make payment at the *end of the school year*, something which Plaintiff emphatically denies, even under *Mendez* itself, Plaintiff is entitled to a preliminary injunction determining the scope of pendency.

School districts are required "to continue funding whatever educational placement was last

---

[1] By the DOE's own admission in filings with the District Court in *Mendez,* "based on the City's practices, payment for tuition and transportation for [Plaintiffs] can be reasonably expected within approximately two weeks" when the invoices for services were received three days prior.

agreed-upon for the child until the relevant administrative and judicial proceedings are complete."

*See Ventura de Paulino*, 959 F.3d at 531.  The DOE is in violation of this Second Circuit precedent,

and Plaintiffs are entitled to an order that the pendency payments are owed to iBRAIN and the

providers of the supplemental services and DOE must fund those payments.

### III.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION UNDER THE TRADITIONAL REQUIREMENTS

While Plaintiffs maintain that the traditional preliminary injunction standards do not apply

when assessing pendency claims under the IDEA (20 U.S.C. § 1415(j)), Plaintiffs assert that even

under the traditional standard, he meets the required burden to obtain injunctive relief. Generally,

when seeking injunctive relief, a plaintiff must "establish that he is likely to succeed on the merits,

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

the equities tips in his favor, and that the injunction is in the public interest." *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A. Likelihood of Success on the Merits

Plaintiffs can show a likelihood of success on the merits because *every* special education

student is entitled to pendency as a matter of law. *T.M.*, 752 F.3d at 152; *Mackey*, 386 F.3d at 163;

*Gabel ex rel. L.G. v. Bd. of Educ.,* 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005). As discussed above,

Plaintiffs have established that there is a Pendency Order based on an unappealed administrative

decision specifying the pendency placement.

The DOE has no basis in the statute or any case law for the unilateral decision to refuse to

comply with a binding order for pendency placement. The Pendency Order clearly establishes

iBRAIN as the last agreed upon placement, and, under well-established caselaw, the IDEA's "stay

put" provision "requires that a school district continue to finance an educational placement made

by the agency and consented to by the parent before the parent requested a due process hearing."

*T.M.*, 752 F.3d at 152.  This necessarily includes funding of tuition, nursing and transportation, as "educational placement" "refers to the provision of special education and related services rather than a specific place, such as a specific classroom or specific school." *K.L.A.*, 371 F. App'x at 154. DOE has provided no statutory basis to support non-compliance with pendency obligations.  These actions contravene the very purpose of the Pendency Provision.  Thus, Plaintiffs are likely to prevail.

### B.  Irreparable Harm

To establish irreparable harm, a plaintiff must demonstrate an injury neither remote nor speculative but actual and imminent. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Where a school district has refused to implement a final administrative order or decision, such as a hearing officer's decision, courts have found irreparable harm. *Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*, No. 90-CV-4, 1990 WL 36803, at *2 (N.D.N.Y. Mar. 30, 1990); *Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*, 560 F. Supp. 701, 705 (W.D.N.Y. 1983). In such circumstances, a plaintiff's injury is actual and imminent because the plaintiff is deprived of the  free appropriate public education to which they are entitled under the IDEA. *Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004). "Interrupt[ing] a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury." *N.J. v. New York*, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011). The law is clear that denial of a placement to which a student is entitled constitutes irreparable harm. *Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*, No. 1:21-CV-00711 (MKV), 2021 WL 1164571, at *9– 11 (S.D.N.Y. Mar. 26, 2021) (citing *Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001)

("[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm.")).

Plaintiffs need not show irreparable harm to obtain injunctive relief here. Irreparable harm is presumed in pendency-related cases as a matter of law. *Honig v. Doe*, 484 U.S. 305, 328 n.10. (1988). If the Court does not enter an order to implement R.Z.'s placements without further delay, R.Z. will suffer three forms of irreparable injury: (1) harm in the form of a continued violation of the procedural rights outlined in 20 U.S.C. § 1415(j)[2]; (2) the substantial risk that the DOE will continue to resist inclusion of the ordered-services in future pendency orders for the next school year which begins in approximately one month; and (3) the subsequent financial repercussions of the continued violations.

Additionally, as discussed above, R.Z.'s educational placement has been placed at risk due to DOE's failure to make timely payments. A student's "ongoing placement at [the private placement] is at increasing risk the longer DOE avoids its uncontested obligations, which would be an irreparable injury to him." *R.S. et al. v. NYC DOE et al*., 21-cv-02257, p. 5 (JPO) (Dkt. No. 22, June 17, 2021) [A copy of the unpublished order is attached as Exhibit 3]. This is especially significant in this case as the school year is ending and DOE has avoided paying a third of the services for R.Z., who will very likely need those same services next school year.

### C. The Balance of Equities Favors Injunctive Relief

The equities favor injunctive relief here. As set forth above, absent injunctive relief, R.Z. will effectively be without pendency placement, as he heads into a new school year. The DOE will have single-handedly erased the pendency placement and Plaintiffs will be forced to litigate these issues anew.

---

[2] *See Heldman on Behalf of T.H.v. Sobol*, 962 F.2d 148, 154 (2d Cir. 1992).

On the other hand, an order declaring that R.Z.'s pendency placement is at iBRAIN with the related services and DOE must fund the unpaid amounts of tuition and services included in the pendency placements will have no ill-effect on DOE. The order will simply repeat what is already contained in the binding placement orders which DOE has ignored and which the underlying administrative officers have no ability to enforce. Further, in the likely event that Plaintiff will need to pursue DPC in the new school year, they will have the security of a pendency placement order going forward.

Further, an injunction directing DOE to fund the outstanding services will in no way prejudice DOE, as R.Z. has not attended DOE schools and DOE has, in effect, paid nothing towards R.Z.'s education for the months that it has not paid pendency. This is especially significant because DOE receives *federal* money allocated to the State of New York for purposes of participating in the IDEA. These federal dollars are presumed up front to serve the needs of the disabled student population located in the State of New York, which is predetermined every year based on the number of disabled students in the State of New York and their level of poverty. *See* https://www.aasa.org/docs/default-source/advocacy/Estimated-State-Grants-Under-IDEA, last visited May 30, 2025[3]. Thus, whether the DOE provides a FAPE or iBRAIN does, the money has been sufficiently allocated up front to serve the needs of disabled students in the State of New York.

Finally, to the extent that the DOE argues that it would be harmed by allocating money to

---

[3] "Courts can take judicial notice of governmental records." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 268 (E.D.N.Y. 2019)(citing *Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017)(taking judicial notice of "all public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute . . . .")). The Court may therefore take judicial notice of this memorandum provided by the Congressional Research Service, whose authenticity cannot be reasonably disputed.

a school (iBRAIN) that is unreasonably expensive and the disabled student population under the DOE's jurisdiction is better served at more modestly priced schools, such a position would have required the submission of evidence at the IHO level and a determination, on the merits, that iBRAIN's tuition was unreasonably expensive and the equities therefore favor a reduction. *See e.g. M.H. v. N.Y.C. Dep't of Educ.*, 712 F. Supp. 2d 125, 170 (S.D.N.Y. 2010)("Here, the DOE does not ask the Court to consider any new evidence that was not before the administrative officers. Rather, it asks the Court, without providing any legal analysis, to find that P.H.'s $80,000.00 tuition is unreasonable *per se*. This request, apart from being unpersuasive … .").

But such a merits-based determination ignores the entire concept of pendency, which is to maintain the student's placement while the current dispute is pending, regardless of the merits of the dispute. *See De Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020)(noting that "the IDEA does not authorize a school district to recoup payments made for educational services pursuant to the stayput provision (i.e., pendency services)[,]" and "Congress's policy choice was that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings."). Thus, whatever the outcome of Plaintiff's challenge to the FOFD for the 2024-25 school year, which, according to the allegations of the Complaint, is still currently pending, while that dispute continues DOE's pendency obligations remain unabated. Thus, the balance of the equities favors Plaintiff.

### D. Preliminary Injunctive Relief is in the Public's Interest

Finally, requiring the DOE to follow the IDEA is in the public interest. When a preliminary injunction is sought to "affect government action taken in the public interest under a statute or regulatory scheme," the court inquires whether the injunction is in the public interest rather than

balancing the equities. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *3. Where Congress has created a special enforcement system, as with the IDEA, the public interest is on the side of maintaining that system's integrity. *Olson*, 2004 WL 1212081. The integrity of the IDEA is maintained by ensuring that administrative orders are adhered to by all parties. Allowing DOE to be delinquent in its legal obligations, particularly considering the long delays it has built into the administration of the underlying due process hearings, which DOE controls, not only erodes the integrity of the administrative process but also the purpose of the IDEA. The public learns that DOE can simply wait out the delays it creates, forcing parents, who usually do not have sufficient resources to maintain their disabled children in unilateral educational placements, to give up trying to procure funding for appropriate educational services.

Granting of the preliminary injunction is not only appropriate but necessary to ensure the timely enforcement of Plaintiffs and R.Z.'s statutory rights and the integrity of the IDEA.

## **CONCLUSION**

Based on the foregoing, the Plaintiffs request that this Court issue a preliminary injunction declaring that Student R.Z.'s pendency placement/program under 20 U.S.C. § 1415(j) of the IDEA during the pendency of all administrative and judicial proceedings relative to R.Z.'s DPC for the 2024–2025 school year is at iBRAIN and includes R.Z.'s related services, transportation, and nursing, with direct funding tuition to iBRAIN and/or the appropriate service provider. Consistent with *Mendez*, Plaintiff is entitled at minimum to a preliminary injunction determining the scope of pendency, including payments beginning October 9, 2024, given the DOE's dispute of same. Additionally, given that the end of the school year is now at hand, Plaintiff is entitled to a preliminary injunction compelling the DOE to make the rest of the pendency payments due and

owing, constituting a third of the payments due overall for the 2024-25 ESY.

Dated:  June 27, 2025
        New York, New York


                              Respectfully submitted,
                              Liberty & Freedom Legal Group
                              *Attorneys for Plaintiffs*

            By:      ***/S/ Kenneth Willard***
                     Kenneth Willard
                     300 E. 95 Street, Suite 130
                     New York, NY 10128
                     (646)850-5035
                     ken@pabilaw.org

## **<u>Verification of Word Count</u>**

Pursuant to the Local Rules of the District Court for the Southern District of New York and Judge Ho's Individual Rules of Practice in Civil Cases, the undersigned verifies that the word count of this document, excluding the caption and titles is 7,315, which is less than 8750 and the font is 12 point.


By: _____*/S/ Kenneth Willard*_____
Kenneth Willard, Esq.