25-cv-1880(JAV)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSA ZAYAS and EDWIN ZAYAS, Individually and as Parent and Natural Guardian of R.Z.,

                Plaintiffs,

- against -

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education *et ano.*,

                Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

**MURIEL GOODE-TRUFANT**

*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel:*

Thomas Lindeman, Esq.
(212) 356-0418
tlindema@law.nyc.gov

1

## **PRELIMINARY STATEMENT**

Defendants Melissa Aviles-Ramos and the New York City Department of Education (collectively "DOE" or "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff's second order to show cause seeking interim relief. (ECF Nos. 35, 36.)

In this emergency motion, Plaintiffs seek an order requiring "Defendants to fund R.Z.'s pendency placement at the International Institute for the Brain ("iBRAIN") for the 2024-2025 school year, including special transportation accommodations and nursing services." ECF No. 35. However, Plaintiffs cannot satisfy any of the four factors necessary to justify a preliminary injunction. DOE has fully paid for R.Z.'s pendency for the 2024-2025 school year. While Plaintiff contends that DOE has misconstrued or violated the underlying pendency order by finding the student's pendency entitlement began on December 16, 2024, Plaintiffs willfully ignore the IDEA's actual pendency requirements in favor of a clear misreading of the IHO's Order.

Consequently, Plaintiff cannot reasonably argue that they have raised a meritorious claim, are experiencing actual or imminent irreparable harm, or that the Preliminary Injunction serves the public interest. On the contrary, the broader population of students and families who have also submitted their funding requests to the DOE are disserved by repeated waves of similar preliminary applications for injunctive relief brought by the same Plaintiff's counsel in this Court.[1]

---

[1] *See, e.g.*, *Chaperon, et al. v. Banks, et al.,* 24-cv-5135 (JHR)(SN)*; Bruckauf, et al. v. Banks, et al.*, 24-cv-5136 (LGS); *Ramos, et al. v. Banks, et al.*, 24-cv-5109 (LGS); *Thomas, et al. v. Banks, et al.*, 24-cv-5138 (JLR); *Archibald v. Aviles-Ramos*, 24cv7550 (KPF); *Desir v. Aviles-Ramos* 24cv8945(MMG).

**STATEMENT OF FACTS**

Upon information and belief, Plaintiffs Rosa Zayas and Edwin Zayas are the parents and natural guardians of R.Z., who has been classified as a student with a disability under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. On December 16, 2024, Plaintiffs filed a Due Process Complaint ("DPC"), that was assigned the Case No. 289807, alleging, *inter alia*, that the DOE failed to provide R.Z. a Free Appropriate Public Education ("FAPE") for the 2024–2025 school year ("SY"). ECF No. 5-2. On January 9, 2025, Impartial Hearing Officer ("IHO") Lauren M. Fazzino issued a Pendency Order, ordering DOE to pay R.Z.'s tuition, transportation, and nursing at iBRAIN. ECF No. 5-3.

Defendant has fully complied with the underlying pendency order. Defendant had previously paid $96,273.86 towards R.Z.'s tuition via check dated March 24, 2025, $86,606.13 for nursing costs via check dated March 27, 2025, and $36,361.76 for transportation via check dated March 25, 2025. Since those payments were issued, a Finding of Fact and Decision was issued on April 3, 2025 finding that DOE offered a FAPE to R.Z. for the 2024-2025 SY and denying Plaintiff's requested relief. Plaintiffs appealed that order on April 25, 2025.[2]

Following Plaintiffs' appeal of the FOFD, DOE began making additional pendency payments. An additional $82,141.91 in tuition funding was paid via check dated May 20, 2025. $73,893.33 was paid via check dated May 23, 2025 for R.Z.'s nursing, and $31,024.32 was paid for transportation costs via check dated May 22, 2025. At this time, DOE has fully paid for R.Z.'s attendance at iBRAIN during the pendency of the underlying action.

---

[2] Plaintiffs' Memorandum of Law in Support of the instant motion incorrectly states that their appeal was filed on May 13, 2025. If the appeal had been filed on that date it would have been untimely.

**LEGAL STANDARD**

[P]reliminary injunctive relief 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Anderson v. Cameron*, 568 F. App'x 67, 68 (2d Cir. 2014) (quoting *Moore v. Consol. Edison of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). To satisfy this burden, a party "must show: (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (citation omitted). The Second Circuit has made clear that a showing of irreparable harm is "the single most important prerequisite for the issuance" of injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *see also* 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2951 (3d ed.) ("A demonstration of irreparable injury by the party seeking relief is an essential prerequisite to a temporary restraining order.").

**ARGUMENT**

**POINT I**

**PLAINTIFFS CANNOT SHOW A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

Plaintiffs cannot show a clear or substantial likelihood of success on the merits. Despite Plaintiffs' repeated claims, Defendants has fully complied with the underlying pendency order Plaintiffs seek to enforce. Thus, any claims for emergency relief are moot.

There is no justification for the instant motion. Plaintiffs knew or should have known that R.Z.'s pendency had been fully paid for by the end of May, 2025, a full month before this purported "emergency" was brought to the Court. Nonetheless, Plaintiffs have continued to burden both the Court and Defendants with requests for relief that they have already received in full.

Insofar as Plaintiffs argue that the underlying pendency order entitles them to additional funding from October 9, 2024 through December 16, 2024, before the date that the administrative proceeding began, that position ignores the reality that R.Z.'s entitlement to pendency began when the underlying administrative proceeding began on December 16, 2024. *See e.g. Doe v. East Lyme Bd. Of Educ.,* 790 F.3d 440, 445 (2d Cir. 2015). *See also Moonsammy et al v. Banks et al,* 24-cv-2616(PAE) (ECF No. 41, filed August 22, 2024). While Plaintiffs may have asserted to the IHO that pendency began on an earlier date, IHO Fazzino's order does not detail a specific date that pendency began. Indeed the IHO could not have ordered pendency to begin before the proceeding began pending.

Because Plaintiffs have received all owed payments pursuant to pendency, and because Plaintiffs otherwise seek to recover funds not available under pendency, they cannot show any likelihood of success on the merits, and their application must be denied.

### POINT II

### PLAINTIFF CANNOT SHOW A LIKELIHOOD—LET ALONE MAKE A STRONG SHOWING—OF IRREPARABLE HARM.

Plaintiffs do not and cannot show a likelihood of irreparable harm, let alone make the required strong showing of irreparable harm. An irreparable harm must be an injury "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). iBRAIN and Sisters Travel have not provided to R.Z. with a specific determination or decision that R.Z. will be disenrolled by a date certain from iBRAIN or the related transport service, Sisters Travel, Inc. *because* iBRAIN or Sisters Travel is shutting down due to a failure to pay fees. In Plaintiff's second motion for a preliminary injunction, they have failed to show any possible harm to R.Z., because Defendant has fully complied with its pendency obligations.

Plaintiffs have made no showing that R.Z.'s schooling or services are at risk, which is fatal to their application. *See Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) ("Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied."); *Sterling v. Deutsche Bank*, 368 F. Supp 3d 723, 727 (S.D.N.Y. 2019) ("Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."). R.Z. attended iBRAIN through the end of the 2024-2025 extended school year, which is now over. There can be no irreparable harm to R.Z. for the 2024-2025 school year because that school year has ended, notably without any harm to R.Z. or iBRAIN, and DOE has paid all owed amounts for that period.

Crucially, even had DOE not already fully complied with its pendency obligations, any alleged financial issues at iBRAIN—a nonparty to this action and the administrative proceedings below—are not relevant to irreparable harm to the actual Student-Plaintiff R.Z. It is not DOE's obligation to avert a closure of the iBRAIN school by expediting payments to mitigate its alleged financial hardships, as the court has previously informed Plaintiffs' Counsel:

> THE COURT: I don't think it's DOE's obligation to avert a close down of the school.
>
> MR. BELLANTONI: Well, when they have an obligation to pay pendency for those kids-
>
> THE COURT: The children can be educated elsewhere, sir.

*Grullon et al v. Banks*, et al, 23-cv-10388 (KPF), Tr. of Jan. 5, 2024 Hrg., ECF 39-3, at 58:7-12. *See also id.* at 62:4-15:

> THE COURT: I'm also not saying that students at iBRAIN, if not iBRAIN itself, should not advocate for prompt payment, and I actually have no horse in the race as to iBRAIN's continuing vitality or viability as a provider of its services to students. It is not my place to keep them afloat. It is not my place to shut them down. All of that said, I am troubled, because with each of these three waves of litigation, iBRAIN has suggested that somehow its students and by extension it is entitled to payment ahead of everybody he would [*sic*]. There are many schools and many students, and I am troubled

> by these aggressive litigation positions to basically short circuit the line that every other school's students waits on.

Accordingly, it is beyond the scope of DOE's obligations to avert a shuttering of iBRAIN, and such a shuttering does not meet the standard of irreparable harm. Even setting aside Defendants' lack of obligation to iBRAIN's fiscal health, Plaintiffs fail to establish they are entitled to any additional funds, or that such funds would eliminate any of the alleged risks to R.Z.'s placement stemming from iBRAIN's purported financial difficulties or even that the payments would resolve iBRAIN's purported financial difficulties.

Plaintiffs have thus failed to meet their burden of showing that Plaintiffs' circumstances require DOE to make any additional payments pursuant to R.Z.'s pendency entitlement. Because Plaintiff cannot show even a possibility of irreparable harm in the instant action, their instant motion must be denied.

## POINT III

**GRANTING THE PRELIMINARY INJUNCTION AND TRO SOUGHT BY PLAINTIFFS WILL NOT SERVE THE PUBLIC INTEREST.**

The preliminary injunction and TRO sought by the Plaintiffs is against the public interest. Plaintiffs seek funding well beyond the scope of the underlying administrative order after DOE has fully complied with that same order. LFLG's tactics employed here are identical to the unsuccessful tactics used by BIRG in previous school years, during which they have brought at least twenty unsuccessful motions for preliminary injunction to force DOE to expedite payments and to use the IDEA "to frustrate the fiscal policies of participating states." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 535 (2d Cir. 2020). *See also Mendez v. Banks,* 65 F.4th 56 (2d Cir. 2023); *Neske v. New York City Dep't of Educ.*, No. 22-2962, 2023 WL 8888586, 2023 U.S. App. LEXIS 34126 (2d Cir. Dec. 26, 2023). Judicial endorsement of these tactics stands only to harm the public interest.

As the Second Circuit has stated, such an order granting Plaintiffs' and iBRAIN's attempt to circumvent Defendants' basic budgetary oversight measures, ordinary payment procedures, and administrative processes would be inappropriate. *See Mendez*, 65 F.4th at 63 ("Our determination that the statute does not require circumvention of ordinary payment procedures here comports with the practical realities of bureaucratic administration. Any agency will need some amount of time to process and pay submitted invoices. If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement."); *Ventura De Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519 (2d. Cir 2020). ("Nothing in the statutory text or the legislative history of the IDEA … implies a legislative intent to permit [parents or guardians] to utilize the stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states.").

Just as in *Mendez*, the Plaintiffs here, represented by the same law firm, seek to use this Court's resources to circumvent the DOE's ordinary course of business and administrative processes and force immediate payments for tuition and transport even though R.Z.'s placement on ongoing education is not at risk. DOE "implement[s] basic budgetary oversight measures," *Mendez*, 65 F.4th at 63, to ensure that taxpayer funds are properly spent and cared for and that the students receiving those funds are actually receiving adequate services because public funding for pendency services can never be recouped. *See Ventura De Paulino*, 959 F.3d 519 at 535 (2d Cir. 2020). Defendants respectfully submit that they are duty-bound to follow their basic budgetary oversight measures, and the Court should not indulge Plaintiffs' pattern and practice of attempting to "frustrate [DOE's] fiscal policies" and claim "entitlement to immediate payment or reimbursement." *Mendez*, 65 F.4th at 63.

Plaintiffs argue that the instant action is distinguishable from *Mendez*. They are correct. In *Mendez,* DOE received bills on a monthly basement and remitted those payments in the ordinary course of business. Because of that billing cycle, new pendency payments came due every month through the end of the school year. Here, DOE has fully paid for R.Z.'s pendency costs before the

school year ended, and the school year is now over. Thus, even the veneer of merit afforded Plaintiffs' counsel by the Circuit in *Mendez* has been stripped from the instant action.

The instant action, like the dozens of similar actions brought by Plaintiffs' Counsel on behalf of students attending iBRAIN in the last few years, does not even benefit Plaintiffs because they are not obligated to pay any amount to any provider under the contracts they are required to sign. Nor does this action benefit the public because the public interest squarely rests in ensuring that taxpayer funds are properly spent. Instead, Plaintiffs' instant motion for a preliminary injunction and TRO serves only to ensure that (1) expedited payments are made to iBRAIN and its related transportation service Sisters Travel; and (2) Defendants are additionally burdened over and above their responsibilities to ensure that the thousands of students seeking payment under FOFDs, SRO decisions, and pendency orders are receiving appropriate services and being reimbursed for the same.

As such, Plaintiffs have not shown, and cannot show, that granting the instant motion would serve even the interests of Plaintiffs, much less the public interest. The Court should therefore deny the preliminary injunction and TRO Plaintiffs aggressively seek.

## POINT IV

### THE BALANCE OF HARDSHIPS FAVORS DEFENDANTS.

Finally, the balance of hardships does not favor Plaintiffs. Plaintiffs have failed to show that R.Z.'s educational placement is at risk, and the only issue is the timing of monetary payments Plaintiff has already received. Plaintiffs have already allowed DOE to comply with its "basic budgetary oversight measures" and follow its "ordinary payment procedures[,] [which] comports with the practical realities of bureaucratic administration," *Mendez*, 65 F.4th at 63. Those ordinary payment procedures provably did not create the type of injury cognizable for emergency injunctive relief, as R.Z. received appropriate pendency funding and finished the school year at iBRAIN. Insofar as Plaintiffs seek additional funds for that school year, the only relief sought in Plaintiffs'

preliminary injunction motion is monetary. *See Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.") Thus, the equities favor Defendants, and Plaintiffs' requested relief should be denied.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny in its entirety Plaintiffs' second motion for a preliminary injunction and TRO seeking immediate funding, and grant Defendants such other and further relief that the Court deems just and proper.

Dated: New York, New York
       July 7, 2025

                                          Muriel Goode-Trufant
                                          Corporation Counsel of the
                                          City of New York
                                          Attorney for Defendants
                                          100 Church Street
                                          New York, New York 10007

                                          /s                    
                                          Thomas Lindeman
                                          Senior Counsel

**CERTIFICATE OF COMPLIANCE**

      Counsel of Record hereby certifies pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York that the enclosed Memorandum of Law contains approximately 2,798 words including footnotes and endnotes and excluding the cover page, captions, table of authorities, table of contents, signature block, and this certificate, which is less than the 8,750 words permitted for this motion by Rule 7.1(c). Counsel relies on the word count function of the computer program used to prepare this brief.

Dated:      New York, New York
                July 7, 2025

                                                      ___/s_____
                                                      Thomas Lindeman
                                                      Senior Counsel