UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
ROSA ZAYAS and EDWIN ZAYAS, as Parent and
Natural Guardian of R.Z., and ROSA ZAYAS, and
EDWIN ZAYAS, Individually *et al.*,

                                                                              1:25-cv-01880

                Plaintiffs,

-against-

MELISSA AVILÉS-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

                Defendants.
_____X

**PLAINTIFF'S REPLY IN FURTHER**
**SUPPORT OF A TEMPORARY RESTRAINING**
**ORDER**

Kenneth Willard
Liberty and Freedom Legal Group, Ltd.
*Attorneys for the Plaintiff(s)*
300 East 95th Street, Suite 130
New York, New York 10128
hearings@pabilaw.org

**LEGAL ARGUMENT**

At the time of Plaintiff's filing of the Motion for a Temporary Restraining Order ("TRO"), Plaintiff noticed to this Court that the end of the school year was near and Defendants New York City Department of Education ("DOE") and Melissa Aviles-Ramos ("Ramos")(collectively, "Defendants") still had 30% of their pendency obligations for the 2024-25 school year unpaid. Defendants now claim that the TRO is moot because R.Z.'s pendency has been fully paid out for the 2024-25 school year. Defendants argue that the many applications for preliminary injunctions that have been filed by this *firm* evidence a pattern or practice that is meritless.

Defendants do not argue that *Plaintiffs* have unnecessarily papered the courts with applications for preliminary injunctions. The twenty applications for preliminary injunctions Defendants complain of involve different plaintiffs in different actions, which are not before this Court. This is only the second application for a TRO/PI that has been filed in this case, and it came at a time when Defendants still had, as they do now, 30% of their pendency obligations still outstanding with the school year quickly coming to an end. *See Willis v. Adult & Prison Educ. Res. Workshop*, Civil Action No. 22-1615-SRF, 2025 U.S. Dist. LEXIS 120061, at *10-11 (D. Del. June 24, 2025)(denying a motion to stay a hearing panel's favorable decision for the parents and ordering the school district to make pendency payments while it appeals the decision, noting particularly that [t]o rule otherwise 'would mean that the panel decision[s] in favor of the [Students are] of no practical significance until [they are] affirmed by a decision that cannot be or is not appealed.'")(quoting *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 84-85 (3d Cir. 1996)(concluding that "the policies underlying the IDEA … favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing the pendent placement."); citing *Drinker by Drinker v. Colonial Sch.*

1

*Dist.*, 78 F.3d 859, 864-65 (3d Cir. 1996)(explaining that the stay-put provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.")).

Defendant's refusal to make these additional pendency payments is a direct affront to Congress's policy-making choice and the purposes of the IDEA's "stay put" provision to maintain the child's current educational placement in accordance with the final and binding administrative order in this case, SRO Decision 23-299.  *See* ECF No. 5-1.  As recognized by IHO Fazzino in her Pendency Order, this is an agreement implied by law regarding R.Z.'s educational placement for the 2024-25 until the current dispute is resolved.  *See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483-84 (2d Cir. 2002)("[O]nce the parents' challenge [to a proposed IEP] succeeds … consent to the private placement is implied by law, and the requirements of [the stay-put provision] become the responsibility of the school district."); *see also* ECF No. 5-3.

Additionally, at the time of the filing of Plaintiff's application for a TRO, there was an active dispute about what constitutes pendency, *i.e.* whether Defendant's obligations extend from October 9, 2024, as stated by the clear terms of the Pendency Order, or whether, as DOE argues, DOE is only liable for payments starting at the filing of Plaintiff's Due Process Complaint ("DPC") on December 16, 2024.  The parties continue to dispute these payments as evinced by Defendants' position in its opposition, where DOE maintain that it has no obligation to pay pendency according to IHO Fazzino's Pendency Order.

As explained in Plaintiff's original moving papers, a similar dispute was resolved in favor of the plaintiffs in *Moonsammy v. Banks*, 2024 U.S. Dist. LEXIS 99415 (S.D.N.Y. June 3, 2024). *See Moonsammy*, 2024 U.S. Dist. LEXIS 99415 at *16-18.  The court issued an injunction

compelling the DOE to make payment on its pendency obligations, obligations which DOE had contested based on a partially appealed SRO decision. *See* 2024 U.S. Dist. LEXIS 99415 at *16-18. DOE argued that it could not be used to form the basis of pendency based on the SRO's favorable finding on prongs I and II of the *Burlington/Carter*. *See Id.* at *16-18. The court ultimately rejected that argument, issuing a preliminary injunction and declaring that the partially appealed SRO decision constituted the student's pendency placement for the relevant year concerned and that the DOE was responsible for those payments. *See Id.* at *19. The court notably avoided the issue of immediate payment, recognizing that it was bound by *Mendez*, but nevertheless issued the preliminary injunction to declare the rights and obligations of the parties and at least get the ball rolling on DOE's pendency obligations, if not compelling immediate payment under *Mendez*. *See Id.* at *20-21.

Also as noted in Plaintiff's moving papers, a similar issue was brought up in *Araujo v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 175767 (S.D.N.Y. Sep. 24, 2020), where the court issued a preliminary injunction ordering the DOE to fund tuition for the 2020-21 school year, none of which payments had been made up to that point. *See Araujo*, 2020 U.S. Dist. LEXIS 175767 at *9-11. The court rejected the defendant's argument that the plaintiffs had not shown irreparable harm, reasoning,

> Plaintiffs seek immediate vindication of their undisputed rights to pendency funding via preliminary injunction. They correctly note that the stay-put provision typically operates as an "automatic injunction" foreclosing consideration of irreparable harm and the other factors of the traditional preliminary injunction inquiry, and thus that an injunction should issue as a matter of course. *Ventura*, 959 F.3d at 529. Accordingly, a preliminary injunction granting pendency funding for the thirteen students the parties agree have pendency at iBRAIN is warranted.

2020 U.S. Dist. LEXIS 175767 at *10.

Plaintiff asks nothing more here, given the active dispute on what constitutes pendency and the clear terms of IHO Fazzino's Pendency Order. Defendants' arguments about the repeated

3

filings of Plaintiff's *firm* not only ignore the fact that this firm has represented literally dozens of parents across multiple different due process proceedings, securing numerous wins against the DOE on fundamental entitlements under the IDEA, with only some of those disputes ending up in federal court, but also the fact that there is an active dispute about what constitutes pendency based on DOE's violation of the clear terms of IHO Fazzino's Pendency Order. Based on DOE's refusal to acknowledge that Order, a TRO is needed to determine the scope of pendency and compel DOE to make payment, if not immediately. This position is consistent with *Moonsammy* which recognized a similar dispute, solved it by means of a preliminary injunction declaring the parties' rights and obligations under the IDEA, but nevertheless acknowledged the holding in *Mendez* by refusing to issue a preliminary injunction requiring immediate payment.

In arguing that Plaintiff's TRO is meritless, DOE completely ignores the basis of this dispute and simply presumes that the Court should side with its position that DOE is free to ignore the terms of IHO Fazzino's Pendency Order and issue payment based on its own unilateral determination of what constitutes pendency. The payments that DOE now complains establish that payment is fully made, and therefore necessarily that Plaintiff's motion is meritless, actually do the opposite. They demonstrate the fundamental need for a TRO to compel DOE to comply with IHO Fazzino's Pendency Order and pay out the remainder of R.Z.'s pendency for the 2024-25. DOE is actively disputing these obligations, and its position before this Court clearly demonstrates that it will not make these disputed payments without a TRO being issued.

Additionally, as noted in the Complaint, DOE specifically had an opportunity to object to R.Z.'s pendency placement after IHO Fazzino went out of her way to send an email to the parties notifying DOE that any failure to object to the pendency placement form that was attached to the Plaintiff's DPC would result in her so-ordering the form. *See* ECF No. 5, ¶ 47. DOE did not

4

contest the form and it was so ordered by IHO Fazzino.  DOE's about-face – arguing that it was never obligated to make pendency payments beyond December 16, 2024 when the DPC was first filed – is a total departure from its original position, and a telling demonstration of DOE's refusal to fully fund R.Z.'s pendency entitlement for the 2024-25 school year.

DOE agrees that *Mendez* is distinguishable from this case but argues that the distinguishing factors show that Plaintiff's motion does even have the "veneer of merit" that was afforded to the plaintiff in that case.  Specifically, DOE argues that whereas payments in *Mendez* had not begun to issue because the year had not yet concluded and payments would be made in their due course, whereas in this case payments have been fully made and the year is over.  *See* ECF No. 41, at 8-9.  This turns the reasoning of *Mendez* and the conclusions reached in that case on its head.  Defendants again all but ignore the fact that the year is now over and 30% of its outstanding pendency payments for the 2024-25 school year have not been made, based on a dispute about the scope of pendency.  Defendants simply assume that this Court could and should side with Defendants' position, that no dispute in fact exists, and simply write off Plaintiff's application for a TRO as one in another endless series that Plaintiff's firm has filed.  Notwithstanding the fact that those same motions demonstrate the recalcitrance of the DOE in honoring its own pendency obligations (or the fact that pendency payments were ultimately made in the vast majority of those cases, if not all of them), here DOE actively disputes its pendency obligations.  *Mendez* did not involve a dispute at all.  The Second Circuit recognized this fact by relying, in part, on *Abrams v. Porter*, No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 (2d Cir. Dec. 9, 2021).  The Second Circuit noted of that case, "Because 'both sides agreed that there was no risk of the students losing their pendency placement,' the Court held that 'the district court did not abuse its discretion in denying an injunction under the IDEA's stay-put provision.'"  *Mendez*, 65 F.4th at 63 (quoting *Abrams*,

5

No. 20-3899-cv, 2021 U.S. App. LEXIS 36362 at *6). Here, the dispute is an active one and has resulted in the withholding of pendency payments R.Z. is entitled to under IHO Fazzino's Pendency Order. DOE's assumption that no dispute exists is a fallacy that deprives *Mendez* of its driving force. A dispute does exist and a TRO is needed to resolve it.

In the same vein, DOE's attempts to argue that Plaintiff is not entitled to override the DOE's ability to "implement basic budgetary oversight measures," in little more than a reflexive, knee-jerk nod to the reasoning of *Mendez*, *see Mendez*, 65 F.4th at 63, is a disingenuous position given its legal arguments in this case. This is not a case, as it was in *Mendez*, where there is no dispute at all about DOE's pendency obligations, *see* 65 F.4th at 63; here there is an active dispute by DOE about what constitutes pendency and the scope of pendency obligations for the 2024-25 school year. This is hardly a "basic budgetary oversight measure," but a considered legal (if unilateral) determination impacting the scope of pendency itself. DOE's reliance on *Mendez* is misplaced.

It is for this reason that DOE's arguments that Plaintiff cannot show irreparable harm are also ultimately misplaced. Both *Araujo* and *Moonsammy*, fully cognizant of *Mendez*, issued preliminary injunctions to resolve disputes that go to the heart of DOE's pendency obligations and the need to keep the child in their current educational placement, a policy determination by Congress that "all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker*, 78 F.3d at 864-65. This is fully consistent with the IDEA's "stay put" provision, which acts as an "automatic injunction" without the need to make a showing of irreparable harm under the traditional test for a preliminary injunction. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).

Moreover, DOE's arguments that Plaintiff is not responsible for the outstanding amounts due under the relevant vendor agreements, even if she does lose on this case, ignores the terms of those contracts. It is clear that not only is Plaintiff obligated for the tuition, transportation and nursing services, but is obligated to pay those amounts if and when she should lose on any administrative or judicial proceedings with the DOE regarding the IDEA. *See* ECF No. 5-2, at 37 (noting "all monies then-due will become immediately due within thirty (30) days of the final adjudication."); *see also Id.* at 44 ("In the event an administrative or court decision is not in the CLIENT's favor for payment, payment will be suspended until the CLIENT has exhausted all legal remedies available to them to secure third party funding, when all payments will immediately become due.").

For the foregoing reasons, this Court should issue an immediate TRO defining the scope of pendency for the 2024-25 school year and ordering DOE to make the outstanding pendency payments for that year, albeit in due course.

Dated: July 8, 2025
       New York, New York

                                         Respectfully submitted,
                                         Liberty & Freedom Legal Group
                                         *Attorneys for Plaintiffs*

By:    ***/S/ Kenneth Willard***
        Kenneth Willard
        105 East 34th Street, Suite #190
        New York, New York 10016
        (646)850-5035
        ken@pabilaw.org

**Verification of Word Count**

Pursuant to the Local Rules of the District Court for the Southern District of New York and Judge Rochon's Individual Rules of Practice in Civil Cases, the undersigned verifies that the word count of this document, excluding the caption and titles is 2,251, which is less than 3500 and the font is 12 point.

By:    */S/ Kenneth Willard*
        Kenneth Willard, Esq.